IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 29, 2014 Session[1]


GREG PARKER ET AL. v. HOLIDAY HOSPITALITY FRANCHISING,
INCORPORATED ET AL.


Appeal by Permission from the Court of Appeals, Eastern Section
Circuit Court for Roane County
No. 11-CV-5      Russell E. Simmons, Judge

_____


No. E2013-00727-SC-R11-CV - Filed September 12, 2014

_____


We granted permission to appeal in this premises liability action to address two issues: (1) whether the undisputed facts establish either the accepted work doctrine exception or the nondelegable duty to the public exception to the general rule that property owners are not vicariously liable for the negligence of independent contractors; and (2) whether disputes of material fact remain concerning the property owner's actual or constructive notice of the defective condition created by the independent contractor's negligence. We hold that the undisputed facts do not establish either exception to the general rule of non-liability and that the undisputed facts establish that the property owner had neither actual nor constructive notice of the defective condition created by the independent contractor's negligence. Accordingly, the judgment of the Court of Appeals is affirmed in part and reversed in part. The judgment of the trial court granting the property owner summary judgment is reinstated.


**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Affirmed in Part and Reversed in Part; Judgment of the Trial Court Reinstated**


CORNELIA A. CLARK, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and JANICE M. HOLDER, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

_____

[1] Oral argument was presented on the campus of Lipscomb University in Nashville, Tennessee, as part of the Girls State S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

W. Richard Baker, Knoxville, Tennessee, for the appellants, Greg and Diane Parker.

Brian H. Trammell, Andrew J. Lewis, Knoxville, Tennessee, for the appellee, Shashi Patel, d/b/a S.P. Partnership d/b/a Holiday Inn Express.

James Bryan Moseley, Murfreesboro, Tennessee, for the amicus curiae, James Bryan Moseley.

# OPINION

## I. Factual and Procedural Background

The following facts are undisputed. On May 12, 2010, Greg and Diane Parker, a married couple, came to Tennessee from their home in California to visit Ms. Parker's father. Mr. Parker had been injured in a 2004 logging truck accident and was paralyzed from the waist down, so the couple rented a handicap accessible room at the Holiday Inn Express ("Hotel") in Harriman, Tennessee. The defendant, Shashi Patel, owned and operated the Hotel, doing business as S.P. Partnership, which, in turn, was doing business as Holiday Inn Express (collectively referred to herein as "Mr. Patel" or "the defendant").

The Parkers checked into Room 229 at approximately 4:00 or 5:00 p.m. on May 12th. As was their custom when traveling, the Parkers inspected the bathroom and noticed a "gap between the shower bench and the wall." To Mr. Parker it appeared that one of the upper brackets supporting the bench "was pulled away from the wall maybe an eighth of an inch or a little more." After shaking and pressing down on the bench to confirm that it was "loose or not secured to the wall," Mr. Parker returned to the front desk, reported the loose shower bench, and requested a different room. Hotel staff informed Mr. Parker that no other handicap accessible rooms were available but assured him that someone would repair the shower bench.

After the Parkers left the Hotel for dinner a short time later, Craig Tyner, the Hotel maintenance man, entered their room and inspected the shower bench. Mr. Tyner did not notice any "obviously loose bolts or other problems with the shower bench." However, "[b]ecause a complaint had been made," he "tightened the shower bolts that fastened the shower bench to the wall." After doing so, Mr. Tyner pressed down on the bench, and it "did not bow or move in any way."

When the Parkers later returned from dinner, Mr. Parker checked the shower bench and saw "that it was bolted up flush to the wall like it should be." Mr. Parker also "manually pushed on" the shower bench, and it did not "shake or sound loose." Ms. Parker also looked at the shower bench and no longer saw the gap between the bench and the wall, which she had noticed earlier. According to Ms. Parker, when she and her husband pressed on the bench it "seemed stronger" and barely flexed.

On the morning of May 13, 2010, Mr. Parker went into the bathroom alone to shower. Mr. Parker transferred himself from his wheelchair to the shower bench and had been showering for approximately ten minutes when the bench suddenly collapsed, causing Mr. Parker to fall to the floor of the shower. Mr. Parker's buttocks hit the floor first, but the backs of his legs and his right shoulder also hit the wall and floor as he fell.

Ms. Parker, who had been using a mirror just outside the bathroom door, heard the crash and immediately entered the bathroom. Ms. Parker described the bathroom as "very dangerous," explaining that the floor was wet and covered in broken tiles and her husband looked "very distressed" and grimaced with pain. Ms. Parker helped her husband move out of the bathroom and onto the bed, dragging him from one area to the other on a towel. Ms. Parker examined Mr. Parker's body and discovered a red "welt" near his tailbone. She also photographed Mr. Parker's injuries and the collapsed shower seat.

After composing himself and dressing, Mr. Parker reported the incident to the person on duty at the Hotel's front desk. This person, in turn, informed Mr. Patel of the incident. After making the report, the Parkers left the Hotel to visit Ms. Parker's father. When they returned, the Hotel staff moved the Parkers into another handicap accessible room, where they remained for the duration of their visit to Tennessee.

Later that same day, Mr. Parker began experiencing pain in his entire back, extending from between his shoulder blades to his tailbone. The next day, May 14, 2010, the Parkers went to Methodist Medical Center in Oak Ridge, Tennessee, where x-rays were taken of Mr. Parker's mid-back. Mr. Parker was released, given a prescription for pain medication, and advised to follow up with his own primary care physician. When he returned to California, Mr. Parker saw his primary care physician, who ordered more x-rays that revealed compression fractures to three vertebrae (T-7, T-8, and T-9) of Mr. Parker's thoracic spine. Mr. Parker later developed pressure sores on his buttocks and suffered more frequent urinary tract infections and bladder pain than he had experienced before the fall he sustained when the shower bench collapsed.

On May 11, 2011, the Parkers filed suit against Mr. Patel individually and against the entities by which he was doing business: S.P. Partnership and Holiday Inn Express.[2] The Parkers sought compensatory damages for Mr. Parker's past and future medical expenses, loss of quality of life, physical pain, and mental suffering and for Ms. Parker's "loss of society, services, care and consortium." The Parkers also sought punitive damages.

Mr. Patel denied liability and raised a comparative fault defense, claiming, as pertinent to this appeal, that D & S Builders, LLC ("D & S Builders") negligently constructed or installed the shower bench. The Parkers responded by amending their complaint to allege that D & S Builders had failed to install the shower bench according to the manufacturer's specifications, had concealed the defective installation with a sheetrock and tile wall, and had failed to inform Mr. Patel of the defective installation. The trial court entered an order on August 8, 2012, dismissing the Parkers' claims against D & S Builders based on the expiration of the applicable statute of repose.[3]

Mr. Patel then moved for summary judgment, arguing that: (1) the defective installation of the shower bench was a latent defect caused by the negligence of an independent contractor, D & S Builders; (2) that he had no actual or constructive notice of the defect; and (3) that he had no duty to inspect the independent contractor's work. For purposes of the summary judgment motion, the parties agreed that the following additional facts are undisputed: (1) the shower bench collapsed because D & S Builders failed to use proper blocking to secure it to the interior wall; (2) at the time the bench collapsed the defective installation was concealed by a sheetrock wall; (3) the defect could have been discovered if the shower bench installation had been inspected during the Hotel's construction, before the sheetrock wall was installed; (4) Mr. Patel visited the Hotel once or twice per week during its construction but did not personally inspect the shower bench at any time prior to its collapse; (5) Mr. Patel would have noticed the absence of proper support on the shower bench had he inspected it during installation; (6) Mr. Patel relied upon D & S Builders to construct the Hotel in a reasonably safe manner free from defects; (7) the shower bench was designed to support a person weighing up to 350 pounds if properly installed; (8)

---

[2] The Parkers also initially named Holiday Hospitality Franchising, Incorporated, doing business as Holiday Inn Express (collectively "Holiday Hospitality"), as a party to the lawsuit. By an order entered January 28, 2013, the trial court granted Holiday Hospitality's motion for summary judgment, and the Parkers have not appealed that decision. This opinion uses the style that appeared on the complaint and on the decision of the Court of Appeals.

[3] The certificate of occupancy for the Hotel was issued on July 31, 2006. A four-year statute of repose applies to negligent construction claims. Tenn. Code Ann. §§ 28-3-202, -203 (2000). Neither party has appealed the trial court's dismissal of the Parkers' claims against D & S Builders as barred by the statute of repose.

Mr. Parker weighed 200 pounds when the shower bench collapsed; (9) Mr. Patel had never received any complaints about the shower benches at the Hotel prior to this incident; (10) no other handicap shower bench at the Hotel had collapsed prior to this incident; and (11) Mr. Patel took possession of the Hotel from D & S Builders in July 2006.

On February 5, 2013, the trial court granted Mr. Patel's motion for summary judgment, reasoning that property owners are generally not liable for an independent contractor's negligence unless the property owner knew of and accepted defective materials or negligent work. The trial court further concluded that property owners have no duty to inspect the work independent contractors perform.

The Parkers appealed. The Court of Appeals agreed with the trial court that property owners in Tennessee generally are not liable for injuries third parties sustain as a result of an independent contractor's negligence, unless the property owner, or his agent, either caused the defective condition or had actual or constructive notice of it. The Court of Appeals concluded that the undisputed facts of this case establish no exception to the general rule of non-liability. Parker v. Holiday Hospitality Franchising, Inc., No. E2013-00727-COA-R3-CV, 2013 WL 4647779, at *6 (Tenn. Ct. App. Aug. 27, 2013). Nonetheless, the intermediate appellate court found the Parkers' alternative theory—"namely that [Mr. Patel] had constructive notice of the dangerous condition that existed for approximately four years"—"more plausible." Id. Concluding that disputes of material fact remain as to whether Mr. Patel, through the exercise of reasonable care and diligence, should have discovered the defective installation of the shower bench, the Court of Appeals reversed the trial court's grant of summary judgment and remanded the case to the trial court for further proceedings. Id., at *7. The Parkers and Mr. Patel filed separate Tennessee Rule of Appellate Procedure 11 applications for permission to appeal, which we granted.[4]

## II. Standard of Review

Familiar standards govern this Court's review of a decision to grant or deny a motion for summary judgment. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Summary judgment is not appropriate when genuine disputes regarding material facts exist. Id. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." Byrd v. Hall, 847 S.W.2d 208, 215 (Tenn. 1993). We review de

---

[4] For purposes of oral argument and briefing, we designated the Parkers as the appellants and Mr. Patel as the appellee.

novo with no presumption of correctness a lower court's decision on a motion for summary judgment. Thompson v. Memphis City Sch. Bd. of Educ., 395 S.W.3d 616, 622-23 (Tenn. 2012). De novo review obligates this Court to determine anew whether the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. Hughes v. New Life Dev. Corp., 387 S.W.3d 453, 471 (Tenn. 2012). In this determination, the moving party bears the burden of establishing that summary judgment is appropriate as a matter of law because no genuine issues of material fact are in dispute. Byrd, 847 S.W.2d at 215. Thus, we consider the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in the non-moving party's favor. Mills v. CSX Transp., Inc., 300 S.W.3d 627, 632 (Tenn. 2009).

### III. Analysis

#### A. Property Owner's Vicarious Liability for Independent Contractor's Negligence

The general rule in Tennessee is that a property owner is not vicariously liable for injuries third parties sustain from the negligence of an independent contractor who performs work for the property owner. McHarge v. M.M. Newcomer & Co., 100 S.W. 700, 702 (Tenn. 1907) ("[T]he general rule of law is . . . that the proprietor or employer is not liable for the negligence of his contractor and the servants and assistants of the latter . . . ."); see also Fed. Ins. Co. v. Winters, 354 S.W.3d 287, 295 (Tenn. 2011) ("[E]mployers are generally not liable for the negligence of their independent contractors."); Hutchison v. Teeter, 687 S.W.2d 286, 288 (Tenn. 1985) (discussing "exceptions to the general rule of non-liability for the actions of an independent contractor"). The scope of this general rule has been narrowed somewhat over the years by the recognition of various exceptions. Givens v. Mullikin, 75 S.W.3d 383, 394 (Tenn. 2002). The Parkers argue that two such exceptions—the accepted work doctrine and the nondelegable duty to the public—apply here and subject Mr. Patel to liability for D & S Builders' negligence as a matter of law. We address each exception in turn.

#### 1. Accepted Work Doctrine Exception

Relying first upon the accepted work doctrine exception, which the Parkers assert that this Court adopted in McHarge, the Parkers claim that Mr. Patel became vicariously liable for D & S Builders' negligence as a matter of law in July 2006, when he took possession of the Hotel and accepted D & S Builders' work. The Parkers also rely upon section 422 of the

Restatement (Second) of Torts[5] as support for their contention that the accepted work doctrine applies in this case.

In McHarge, this Court recognized the general rule that a "proprietor . . . is not liable for the negligence of his contractor" but also noted the "well-established exceptions and limitations" to the general rule, which were enumerated as follows:

> Where the act contracted to be done is wrongful or tortious in itself; where the injury is the direct or necessary consequence of the work to be done; where the thing to be done or the manner of its execution involves a duty to the public incumbent upon the proprietor or employer; when the work contracted for is intrinsically dangerous, and the performance of the contract will probably result in injury to third persons or the public; and where the proprietor interferes with the contractor in the performance of the work. *Nor does it apply when the work has been completed and accepted.*

McHarge,100 S.W. at 702 (emphasis added) (citations omitted). Although the McHarge Court enumerated the accepted work doctrine exception, the Court did not discuss the exception in any further detail or base its decision on it. Id. at 703-04. The Court of Appeals later defined the accepted work doctrine exception as follows:

> When the work is finished by the contractor and accepted by the employer, *the liability of the former generally ceases, and the employer becomes answerable for damages which may thereafter accrue from defective conditions of the work.* Before acceptance, the employer must see to it that the work, as to strength and durability, and all other particulars necessary to the safety of the property and persons of third parties, is subjected to proper tests and that it is sufficient. *By acceptance and subsequent use, the owner assumes to the world*

---

[5] Section 422 states:

> A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure
>
> > (a) while the possessor has retained possession of the land during the progress of the work, or
> > (b) after he has resumed possession of the land upon its completion.

Restatement (Second) of Torts § 422 (1965).

*the responsibility of its sufficiency; and as to third persons, the liability of the contractors has ceased and his own commenced.*

Pulaski Hous. Auth. v. Smith, 282 S.W.2d 213, 217-18 (Tenn. Ct. App. 1955) [hereinafter Smith] (emphasis added) (citations omitted), overruled by Johnson v. Oman Const. Co., 519 S.W.2d 782, 788 (Tenn. 1975).

Twenty years later, this Court abandoned the accepted work doctrine exception. Johnson, 519 S.W.2d at 788. Johnson involved a wrongful death claim against two municipalities and an independent contractor for the improper placement and illumination of a highway guardrail. Id. at 784. Relying on the accepted work doctrine exception, the independent contractor moved for summary judgment and supported its motion with an affidavit that stated the work had been performed pursuant to the contract terms and had been inspected and accepted by the Tennessee Highway Department and the Federal Highway Administration upon completion. Id. at 787. Under the accepted work doctrine exception, as defined in Smith, the independent contractor's liability would have ceased and the owner would have become responsible to third parties for the independent contractor's negligence. Smith, 282 S.W.2d at 218. The trial court granted the independent contractor summary judgment, and the Court of Appeals affirmed. Johnson, 519 S.W.2d at 784, 786. This Court granted review and reversed.

Citing Smith and two other Tennessee decisions, the Johnson Court first acknowledged that, under prior Tennessee law, an independent contractor could not be held liable for injuries occurring to a third party after the contractor had completed the work and the work had been "accepted by the owner or the employer." Id. at 788. The Court emphasized, however, that a growing number of jurisdictions had adopted the modern view that a contractor should be held to the standard of reasonable care for the protection of third parties who may foreseeably be injured by the independent contractor's negligence, even if the injuries are sustained after the work has been accepted. Id. at 788. Consequently, the Johnson Court held:

> [I]f an independent contractor is guilty of negligence in performing his work in such a way that it could reasonably be foreseen that the owner or third parties would probably sustain personal injury or property damage as a result of the negligent condition, then the independent contractor should not, as a matter of law, be discharged merely because his work has been accepted and delivered to the owner.

-8-

Id. Although the Court repudiated the accepted work doctrine exception by which a property owner became solely liable for independent contractor negligence, the Court acknowledged that "acceptance of the work by a conscious and responsible owner, particularly where any defects are obvious and patent, may bring into play the rules regarding independent intervening causation." Id. The Court also pointed out that "a contractor may point to the inspection and acceptance of his completed work by a sophisticated and conscious owner as being a circumstance bearing upon the reasonableness of the conduct of the contractor." Id. Applying those principles to the record before it, the Johnson Court reversed the grant of summary judgment and remanded the case to the trial court. Id. at 789.

Contrary to the Parkers' argument, the accepted work doctrine exception does not apply in this case. This Court abandoned the exception in Johnson, and no Tennessee court has, either before or since Johnson, adopted Section 422 of the Restatement (Second) of Torts.[6] Therefore, the accepted work doctrine exception does not automatically subject Mr. Patel to vicarious liability for D & S Builders' negligence.

## 2. Exception for Nondelegable Duty Owed to the Public

The Parkers next rely upon McHarge as support for their argument that Mr. Patel owed a nondelegable duty to the public to install the shower bench using ordinary care and, as a result, is vicariously liable as a matter of law for D & S Builders' negligence. Again, the Parkers' reliance upon McHarge is misplaced.

In McHarge, the store owner defendant hired an independent contractor to repair an awning that extended over Gay Street in Knoxville. 100 S.W. at 701. As the independent contractor repaired the awning, an "awning roller" fell from the building to the ground, striking and injuring a passing pedestrian. Id. at 700. The McHarge Court held that two exceptions to the general rule of non-liability applied and allowed for imposition of liability on the store owner defendant who had engaged the independent contractor. Id. at 702-04.

With respect to the first exception, a nondelegable duty owed to the public, the Court explained that the City of Knoxville, which was not a party to the lawsuit, had a duty to the public "to see that the awning was properly and safely constructed and kept in good repair." Id. at 703. The Court held that, by erecting the awning over the street, the store owner defendant had "assumed all the obligations of the [C]ity [of Knoxville] to the public . . . to exercise a high degree of care and diligence in the construction, maintenance, inspection, and repair of the awning, so as to prevent it from obstructing the street, or endangering those

_____

[6] Nor has any Tennessee court adopted the portion of the Restatement (Third) of Torts, which replaced section 422. See Restatement (Third) of Torts: Phys. & Emot. Harm § 62 (2012).

using it[.]" Id.  The store owner's failure to take appropriate precautions "to protect the public at all times from injury in any way growing out of its maintenance or repair, render[ed the store owner] liable." Id. at 703.  As for the second exception, the McHarge Court explained that the "work contracted for involved a thing intrinsically dangerous to the public, from which injuries to those using the street were probable and might reasonably be anticipated by the proprietor." Id. at 704.

Unlike the store owner defendant in McHarge, Mr. Patel did not assume any duty a governmental entity owed to the public.  He simply engaged an independent contractor to build a hotel.  The undisputed facts fail to establish that Mr. Patel owed a nondelegable duty to the public which would subject him to vicarious liability for the negligence of his independent contractor.

### B.  Property Owner's Premises Liability

Our determination that Mr. Patel is not vicariously liable for the negligence of his independent contractor does not end the inquiry.  We next must consider whether the Court of Appeals correctly determined that disputes of material fact remain on the Parkers' premises liability claim against Mr. Patel.  "Business proprietors are not insurers of their patrons' safety." Blair v. West Town Mall, 130 S.W.3d 761, 764 (Tenn. 2004); McCormick v. Waters, 594 S.W.2d 385, 387 (Tenn. 1980).  Property owners are, however, required to exercise due care under all the circumstances. Blair, 130 S.W.3d at 764.  This general duty of due care imposes upon a property owner the responsibility of either removing, or warning against, any dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence. Eaton v. McLain, 891 S.W.2d 587, 594 (Tenn. 1994).  A property owner's duty does not include, however, "the responsibility to remove or warn against conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care." Rice v. Sabir, 979 S.W.2d 305, 308-09 (Tenn. 1998) (citations and internal quotation marks omitted).  A property owner "is not liable for injuries occasioned by latent defects which are either concealed in defective workmanship or are incidental to the ordinary wear and tear of houses and of which the owner had no notice." Allen v. Saturn Corp., No. M2002-01238-COA-R3-CV, 2003 WL 22055959, at *5 (Tenn. Ct. App. Sept. 4, 2003) (internal quotation marks omitted).  Thus, persons seeking to prevail against a property owner on a premises liability claim must prove the elements of a negligence claim,[7] *and in addition*, must prove either that "the condition was caused or

---

[7] The elements of a negligence claim are:  "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." Satterfield v. Breeding Insulation Co.,

created by the owner, operator, or his agent," or "if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." Blair, 130 S.W.3d at 764.

### 1. Creation of the Defective Condition

The Parkers argue that the undisputed facts of this case place it within the first prong of the Blair analysis: "the condition was caused or created by the owner, operator, or his agent." Id. The Parkers acknowledge that D & S Builders created the defective condition that caused the Parkers' injuries and that D & S Builders was an independent contractor. Nonetheless, the Parkers urge this Court to adopt a rule that deems independent contractors, such as D & S Builders, agents of property owners as to any negligence that relates to the work independent contractors perform for property owners. Applying this rule, the Parkers contend that the undisputed facts establish that Mr. Patel, through his deemed agent D & S Builders, created the defective condition that caused their injuries.

The authority cited by the Parkers does not support adoption of such a rule. These decisions turned on the property owners' constructive notice of the dangerous condition. See Sanders v. State, 783 S.W.2d 948, 952 (Tenn. Ct. App. 1989) (noting that the State had at least constructive notice of the exposed cement that caused injury because a State employee had periodically replaced the wood chips in that area of the playground); Frazer v. Horton Automatics, No. E2006-00102-COA-R9-CV, 2006 WL 3001013, at *7 (Tenn. Ct. App. Oct. 23, 2006) (holding that the property owner's duty of reasonable care included maintaining the automatic doors into the building and concluding that disputes of material fact remained as to the property owner's constructive notice that the automatic doors were closing too quickly); Hamby v. State, No. W2002-00928-COA-R3-CV, 2002 WL 31749450, at *6 (Tenn. Ct. App. Dec. 4, 2002) (noting that the State had at least constructive notice of the injury-causing condition that had existed on the property for twenty or twenty-five years, since the buildings were originally constructed). We agree with the Court of Appeals' conclusion that adopting the rule the Parkers seek would "obliterate" the general rule that a property owner is not vicariously liable for the negligence of an independent contractor. Parker, 2013 WL 4647779, at *6. Such a rule would also, at least in premises liability actions, destroy the distinction the law makes between agents and independent contractors. In effect, the Parkers seek a rule that would transform property owners into insurers of the negligence of independent contractors. We decline to adopt such a rule. We conclude, therefore, that the undisputed facts establish that D & S Builders, not Mr. Patel or his agent, created the defective condition.

---

266 S.W.3d 347, 355 (Tenn. 2008).

## 2. *Actual or Constructive Notice of the Defective Condition*

Because the condition was created by an entity other than Mr. Patel, the outcome of this appeal turns upon whether the undisputed facts establish that Mr. Patel had either actual or constructive notice that the condition existed prior to the accident. See Blair, 130 S.W.3d at 765. As to actual notice, the undisputed facts show that Mr. Patel did not inspect the shower bench installation during the Hotel's construction, when the defect would have been visible. Additionally, he had never received a complaint about the shower bench in Room 229 before its collapse. The undisputed facts thus establish that Mr. Patel lacked actual notice of the defective shower bench installation in Room 229 prior to its collapse.

With respect to Mr. Patel's constructive notice, the Court of Appeals concluded that disputes of material fact remain. "Constructive notice" is defined as "information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." Hawks v. City of Westmoreland, 960 S.W.2d 10, 15 (Tenn. 1997) (quoting Kirby v. Macon Cnty., 892 S.W.2d 403, 409 (Tenn. 1994)). Constructive notice may be established by showing that a dangerous or defective condition existed for such a length of time that a property owner, in the exercise of reasonable care, should have become aware of it. Blair, 130 S.W.3d at 764; Simmons v. Sears, Roebuck & Co., 713 S.W.2d 640, 641 (Tenn. 1986). Constructive notice may also be established by showing that the dangerous condition resulted from "a pattern of conduct, a recurring incident, or a general or continuing condition." Blair, 130 S.W.3d at 765.

We conclude that the undisputed facts establish that Mr. Patel did not have constructive notice of the defectively installed shower bench prior to the accident. Mr. Patel had never received any complaints about the shower bench in Room 229 or about any of the other shower benches at the Hotel. Nor had any other shower bench at the Hotel ever previously collapsed. The defective installation was concealed behind a sheetrock wall and was not visible to Mr. Patel or any Hotel staff after construction was completed.[8] Additionally, visible inspections *and* physical pressure tests of the shower bench by the Hotel maintenance man and the Parkers the evening before it collapsed failed to reveal any problems. It is undisputed that the defective installation existed for approximately four years prior to the accident, but the measures that would have been required to discover the defect,

---

[8] In concluding that disputes of material fact remain, the Court of Appeals relied upon Paradiso v. Kroger Co., 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973). Although Paradiso is distinguishable on the basis that it did not involve a concealed, latent condition, the result reached in Paradiso supports our conclusion. Here, as in Paradiso, the undisputed facts establish that the property owner lacked actual or constructive notice of the defect. Id. at 80 ("[S]ince there is no evidence to support a conclusion the defendant knew or should have known of the defective condition of the rack, we sustain the trial judge's action of directing a verdict.").

such as dismantling the exterior sheetrock wall, are far beyond the parameters of what the duty of reasonable care requires of property owners.

The undisputed facts do, of course, establish that the defective installation would have been visible during construction of the Hotel. However, the undisputed facts also establish that Mr. Patel relied on his independent contractor to construct the Hotel in a reasonably safe manner free from defects and did not inspect the shower installation during the Hotel's construction. Although the Parkers claim that Mr. Patel had a duty to inspect the independent contractor's work during construction of the Hotel and a duty to test the structural integrity of the shower bench after it was installed, the trial court here properly held that Tennessee law does not impose such duties on property owners. See Smith v. Castner-Knott Dry Goods Co., No. 01A01-9512-CV-00554, at *3, 1997 WL 203605 (Tenn. Ct. App. Apr. 25, 1997) [hereinafter "Castner-Knott"].

In Castner-Knott, a seven-year-old child was injured when a mirrored tile fell from the wall of the department store where she was shopping. Id., at *1. Her parents brought a premises liability action against the store owner. Id. The store owner answered the complaint and asserted that the injury resulted from the negligence of the general contractor that provided and installed the tile. Id. The parents amended their complaint and added the general contractor as a party to the action; however, the trial court later dismissed the action against the general contractor as barred by the statute of repose. Id. The store owner then moved for summary judgment, arguing that the general contractor created the condition that caused the injury and that the store owner lacked actual or constructive notice of the condition. Id. The trial court granted the store owner summary judgment and dismissed the complaint. Id.

The parents appealed, but the Court of Appeals affirmed. Id. The intermediate appellate court first concluded that the undisputed facts established that the store owner had neither actual nor constructive notice of the condition that caused injury, pointing out that the store owner had received no reports of loose tiles in the area where the accident occurred and that none of the mirrored tiles in that area had ever previously fallen. Id., at *2. The Court of Appeals next rejected the parents' separate argument that the store owner owed a duty to its customers "to inspect and test the structural integrity of the mirrored tiles on a regular basis." Id. The Court of Appeals explained:

> The risk of defective construction materials or of the negligent construction of improvements to real property should not be placed on the owner of the property unless the owner knew of and accepted the defective materials or negligent work. It is undisputed in this case that Castner-Knott did not design or install the mirrored tiles or the decorative metal channels

holding them in place and that Castner-Knott had no reason to know or even suspect that the mirrored tiles and metal channels were defective or improperly installed. As the owner of the premises, Castner-Knott was acting reasonably by assuming that its contractor and material suppliers constructed improvements to its store that would be reasonably safe for the purposes for which they were intended.

After the construction of the improvements to its Rivergate store, Castner-Knott had the duty to protect its customers from dangers that could be discovered by reasonable inspection. It is undisputed that Castner-Knott employees conducted general visual inspections of the store and that the cleaning crew hired by Castner-Knott was instructed to inform the store of any dangerous conditions that might be discovered during the cleaning process. These activities were reasonable in light of the condition of the premises and Castner-Knott's experience operating department stores. The law will not impose a duty on Castner-Knott to test the structural integrity of mirrored tiles in its stores without some credible evidence of other failures of the same type of mirrored tiles.

Id., at *3 (footnote omitted).

This same rationale applies to the Parkers' argument in this appeal. Again, the undisputed facts establish that Mr. Patel relied upon D & S Builders to construct the Hotel in a reasonably safe manner and that he had neither actual nor constructive notice of the defective shower bench installation. Tennessee law imposed no duty on Mr. Patel to inspect the work of the independent contractor during construction or to test the structural integrity of the shower bench after the Hotel was completed in the absence of any reports of problems with this shower bench or others of the same type. See Id.

## IV. Conclusion

We hold that the undisputed facts fail to establish either the accepted work doctrine exception or the nondelegable duty to the public exception to the general rule that property owners are not liable for the negligence of independent contractors. We also hold that the undisputed facts establish that Mr. Patel had neither actual nor constructive notice of the defective condition created by the independent contractor's negligence. Accordingly, the judgment of the Court of Appeals is affirmed in part and reversed in part. The decision of the trial court granting summary judgment is reinstated. Costs of this appeal are taxed to Greg and Diane Parker and their surety, for which execution may issue, if necessary.

_____

CORNELIA A. CLARK, JUSTICE