# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
April 20, 2016 Session

## CAROL MOONEY, ET AL. v. GENUINE PARTS COMPANY d/b/a NATIONAL AUTOMOTIVE ASSOCIATION, INC. ("NAPA"), ET AL.

### Direct Appeal from the Circuit Court for Crockett County
### No. 3306    Clayburn Peeples, Judge

___

### No. W2015-02080-COA-R3-CV – Filed May 11, 2016

___

This appeal arises out of a premises liability case involving a plaintiff who fell while exiting an auto parts store. The trial court granted the defendants' motion for summary judgment. We affirm and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ANDY D. BENNETT and KENNY ARMSTRONG, JJ., joined.

J. Mark Patey, Jackson, Tennessee, for the appellants, Carol Mooney and Joey Mooney.

Brian Kirk Kelsey, Collierville, Tennessee, for the appellees, Genuine Parts Company d/b/a National Automotive Association, Inc. ("NAPA"), Genuine Parts Company d/b/a NAPA Auto & Truck Parts/NAPA Auto Parts Store #07038, and Wayne Climer.

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

On October 19, 2011, Carol Mooney visited the NAPA Auto Parts store in Alamo, Tennessee, in order to inquire about a job opening. She was told that the position had been filled and left the store within five to fifteen minutes of entering. As she exited through the same double doorway she had entered, she lost her balance and fell onto the concrete outside the store, suffering injuries.

On October 17, 2012, Mrs. Mooney and her husband (collectively, "Plaintiffs") filed this lawsuit against Genuine Parts Company d/b/a National Automotive Association,

Inc. also d/b/a Napa Auto & Truck Parts/Napa Auto Parts – Store # 07038 ("NAPA"). Plaintiffs also named as a defendant the property owner, Wayne Climer. According to the complaint, while Mrs. Mooney was carefully exiting the store, she pushed open one of the glass doors toward the outside and fell due to a precipitous three-and-one-half-inch drop-off from the level of the interior floor to the level of the exterior concrete surface. Plaintiffs alleged that the decline in elevation or drop-off adjacent to the bottom of the metal door frame was hazardous and could have been remedied by a ramp, contrasting floor material or paint, handrails, or warning signs. Plaintiffs alleged that NAPA and Mr. Climer (collectively, "Defendants") were negligent in failing to either repair the dangerous condition or warn customers of its existence. Plaintiffs sought $750,000 in damages for injuries allegedly suffered by Mrs. Mooney and $100,000 in damages for loss of consortium for Mr. Mooney.

Defendants filed an answer, and discovery ensued. On June 4, 2015, Defendants filed a motion for summary judgment. Among other things, Defendants claimed that they had no duty to warn Mrs. Mooney of the three-and-one-half-inch step-down at the doorway because it was not foreseeable that anyone would fall because of it. Defendants submitted discovery responses and deposition testimony in support of their motion for summary judgment. In particular, Defendants submitted the deposition testimony of the store manager, who testified that no one had ever fallen while exiting the doorway in his 26 years of employment. Defendants also noted that Mrs. Mooney had walked over the step without incident only minutes earlier when she entered the store. They submitted her deposition testimony that she was not looking down at the step when she exited the door and fell. Additionally, Defendants noted Mrs. Mooney's testimony that her vision was unimpaired, and it was a clear, sunny day. In sum, Defendants claimed that they had no notice of any probability of harm to Mrs. Mooney, and therefore, Plaintiffs possessed insufficient evidence to demonstrate the duty element of their negligence claim.

Plaintiffs filed a response in opposition to the motion for summary judgment along with an affidavit of Mrs. Mooney and several full-length depositions. Plaintiffs argued that genuine issues of material fact existed regarding whether Defendants had knowledge of a dangerous condition and a duty to correct the condition or warn Mrs. Mooney of its existence. Plaintiffs relied on Mrs. Mooney's testimony about the circumstances surrounding her fall and her opinion that the drop-off was not noticeable. They also relied on the testimony of the store manager, who admitted that he had stumbled going out the doorway, even though he had never fallen. Finally, Plaintiffs submitted the deposition testimony of another store employee who was asked "could you see" where a decline or incline as one opens the door could cause someone to fall, and he responded, "Sure." Plaintiffs claimed that this evidence created a genuine issue of material fact for resolution by a jury.

After a hearing, the trial court entered an order on September 25, 2015, granting the motion for summary judgment filed by Defendants. The trial court concluded that it was not reasonably foreseeable that a normal person would fall traversing the doorway in question. Plaintiffs timely filed a notice of appeal.[1]

## II. ISSUE PRESENTED

On appeal, Plaintiffs argue that the trial court erred in granting summary judgment to Defendants when genuine issues of material fact existed. For the following reasons, we affirm the decision of the chancery court and remand for further proceedings.

## III. STANDARD OF REVIEW

We review a trial court's ruling on a motion for summary judgment de novo without a presumption of correctness. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). When a motion for summary judgment is properly supported as provided in Tennessee Rule of Civil Procedure 56, in order to survive summary judgment, the nonmoving party may not rest upon the mere allegations or denials of its pleading but must respond, and by affidavits or one of the other means provided in Rule 56, set forth specific facts at the summary judgment stage showing that

---

[1]We note that Plaintiff's counsel filed a motion for an extension of time to file his brief on appeal, claiming that he was delayed because the trial court clerk had inadvertently failed to include the deposition of the store manager, Mr. Woodward, in the record on appeal. Plaintiff sought and was granted additional time to file his brief on this basis, and the trial court clerk supplemented the record at the request of Plaintiff's counsel with an additional volume containing Mr. Woodward's deposition. However, our review of the record on appeal indicates that the original record already contained Mr. Woodward's deposition, which spans the last sixty pages of volume two of the technical record. The record now contains two copies of the same deposition. It also contains unanswered written discovery, notices of depositions, a proposed but unsigned order, and other documents that are specifically excluded from the record on appeal by Rule 24 of the Tennessee Rules of Appellate Procedure. We have called attention to these deficiencies not to embarrass or berate the parties or their counsel but to remind litigants of this Court's Rules so as to serve the interests of judicial economy and promote the expediency of appeals. *See, e.g.*, *Douglas v. Caruthers & Assocs., Inc.*, No. W2013-02676-COA-R3-CV, 2015 WL 1881374, at *7 (Tenn. Ct. App. Apr. 24, 2015) (noting similar errors in the record for these reasons).

there is a genuine issue for trial. *Id.* at 265. Summary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial. *Id.* (citing Tenn. R. Civ. P. 56.04, 56.06).

As a general rule, negligence cases are not amenable to disposition on summary judgment; however, summary judgment "may be used to conclude any civil case, including negligence cases, that can be and should be resolved on legal issues alone." *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997). Summary judgment is appropriate in a negligence case if the facts, together with the inferences to be drawn from the facts, are so certain and uncontroverted that reasonable minds must agree. *Keene v. Cracker Barrel Old Country Store, Inc.,* 853 S.W.2d 501, 502-03 (Tenn. Ct. App. 1992). "Courts need not submit to the jury negligence cases containing only a spark or glimmer of evidence that requires the finder-of-fact to make a leap of faith to find the defendant liable for the plaintiff's injury." *Psillas v. Home Depot, U.S.A., Inc.,* 66 S.W.3d 860, 866 (Tenn. Ct. App. 2001) (citing *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995); *Underwood v. HCA Health Servs. of Tenn., Inc.*, 892 S.W.2d 423, 427 (Tenn. Ct. App. 1994)).

## IV. DISCUSSION

In a recent appeal involving premises liability, this Court summarized the following standards that are equally applicable to our analysis in this case:

Negligence cannot be presumed by the mere happening of an injury or accident. *Brackman v. Adrian*, 472 S.W.2d 735, 739 (Tenn. Ct. App. 1971). Simply put, "[p]eople fall all the time but this does not perforce mean that the fall was due to another's negligence[.]" *Anderson v. Wal-Mart Stores East, L.P.*, No. 2:12-00037, 2013 WL 3010696, at *3 (M.D. Tenn. June 18, 2013). A plaintiff must establish the following elements to prove a negligence claim: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care, amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998).

Owners and occupiers of business premises are required to exercise due care under all the circumstances, but they are not insurers of the safety of their customers or the general public. *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014); *Plunk v. Nat'l Health Inv'rs, Inc.*, 92 S.W.3d 409, 413 (Tenn. Ct. App. 2002). Property owners are responsible for "either removing, or warning against, any

4

dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence." *Parker*, 446 S.W.3d at 350 (citing *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994)). The operator of a place of business has a duty to maintain the premises "'in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter, be removed or repaired.'" *Piana v. Old Town of Jackson*, 316 S.W.3d 622, 629-30 (Tenn. Ct. App. 2009) (quoting *Psillas*, 66 S.W.3d at 864). However, the property owner is not responsible for removing or warning against "conditions from which no unreasonable risk was to be anticipated." *Parker*, 446 S.W.3d at 350. Liability is imposed when the condition constituted a danger from which injury might be reasonably anticipated. *Newcomb v. State*, No. M2014-00804-COA-R3-CV, 2015 WL 3956038, at *3 (Tenn. Ct. App. June 26, 2015) (*no perm. app. filed*).

The issue in this case is whether a dangerous or defective condition existed on Defendants' premises such that they had a duty to remove or repair the condition or warn [the plaintiff] of its existence. *See Stewart v. Seton Corp.*, No. M2007-00715-COA-R3-CV, 2008 WL 426458, at *5 (Tenn. Ct. App. Feb. 12, 2008). "The determination of whether a particular location is defective, dangerous or unsafe is a question of fact." *Christian v. Ebenezer Homes of Tenn. Inc.*, No. M2012-01986-COA-R3-CV, 2013 WL 3808210, at *3 (Tenn. Ct. App. July 17, 2013), *perm app. denied* (Tenn. Dec. 26, 2013) (citing *Helton v. Knox County*, 922 S.W.2d 877, 882 (Tenn. 1996)).

*Steele v. Primehealth Med. Ctr., P.C.*, No. W2015-00056-COA-R3-CV, 2015 WL 9311846, at *5 (Tenn. Ct. App. Dec. 22, 2015) (*no perm. app. filed*).

The facts in *Steele* involved a deliveryman who fell on a sidewalk at a five-inch drop-off forming one side of a wheelchair access point. As such, we discussed several premises liability cases involving steps or drop-offs and motions for summary judgment. A review of those cases is helpful here as well:

In *Boykin v. George P. Morehead Living Trust*, No. M2014-00575-COA-R3-CV, 2015 WL 3455433, at *1 (Tenn. Ct. App. May 29, 2015) (*no perm. app. filed*), the plaintiff tripped and fell on a concrete landing in a parking lot, where the parking lot was four inches lower than the concrete landing. The plaintiff stated that he did not notice the difference in height prior to

the fall because he was looking straight ahead, rather than down at where he was walking. No other accidents, incidents, or complaints regarding the concrete landing had been reported to the owner. The plaintiff sued the parking lot owner for negligence, alleging that the owner failed to correct the dangerous condition of the concrete landing, *i.e.*, the four-inch height difference. The trial court granted summary judgment to the defendant, concluding, among other things, that the plaintiff failed to establish that a dangerous or defective condition existed and, therefore, the owner had no duty to warn the plaintiff or to correct the condition. *Id.* at *2. On appeal, this Court affirmed. We concluded that the plaintiff "did not present sufficient evidence to demonstrate that the height deferential between the concrete parking landing and the parking lot was a dangerous or defective condition." *Id.* at *3. We acknowledged that the plaintiff presented photos, his own testimony, and a contractor's statement that the parking lot surface was not flush with the concrete landing. However, we deemed this evidence insufficient. The contractor's statement that the asphalt was not even with the concrete slab failed to establish that a dangerous or defective condition existed. The photos showed only the parking lot and the landing as they existed at the time of the injury. We explained, "[f]or a jury to conclude that the height differential was dangerous or defective would require 'speculation, conjecture, and guesswork.'" *Id.* (quoting *Nee v. Big Creek Partners*, 106 S.W.3d 650, 654 (Tenn. Ct. App. 2002)). We also concluded that the plaintiff's testimony did not permit a reasonable inference that the height differential was defective or dangerous, as he admitted that if he had looked down where he was walking, he would have seen the height difference and avoided the fall. Therefore, we affirmed the grant of summary judgment to the defendant.

In *Stewart v. Seton Corp.*, No. M2007-00715-COA-R3-CV, 2008 WL 426458, at *1 (Tenn. Ct. App. Feb. 12, 2008), the plaintiff was injured in a hospital parking lot when she stepped down off a curb that separated a dirt embankment from the driveway. The curb on which she fell was approximately three inches high, unmarked, unpainted, and the same color as the concrete driveway as well as the adjacent ground. She sued the hospital for negligence, alleging that the curb constituted an unsafe, dangerous, and defective condition. The defendants filed a motion for summary judgment, supported by the testimony of an architect, who stated that the curb from which the plaintiff fell was not designed, constructed, or placed in an unsafe, defective or dangerous manner. The curb was of standard height, color, and construction, and neither the curb nor its placement violated any building codes or standards. According to the

6

architect, building codes did not require that the curb be painted, and that type of curb was common in parking lots throughout the Nashville area.[2] Still, the plaintiff argued that a jury could conclude that the unpainted curb was dangerous. *Id.* at *2. The court of appeals affirmed the trial court's grant of summary judgment to the property owner. The court explained, "A trier of fact cannot conclude that an owner failed to exercise reasonable care to prevent injury to persons on their property if there is no evidence of a dangerous or defective condition." *Id.* at *4 (citing *Nee*, 106 S.W.2d at 654). Although it was undisputed that the curb was unpainted and that the plaintiff did not notice it, the court concluded that the plaintiff simply failed to set forth specific facts to indicate that the hospital breached a duty to the plaintiff.

In *Cagle v. Gaylord Entertainment Co.*, No. M2002-00230-COA-R3-CV, 2002 WL 31728866, at *1 (Tenn. Ct. App. Dec. 5, 2002), *perm. app. denied* (Tenn. June 30, 2003), the plaintiff fell in a hotel parking lot when she allegedly tripped on a long white concrete curb or barrier separating opposing parking spaces. This Court affirmed the trial court's grant of summary judgment to the hotel, finding no proof of a dangerous condition. *Id.* at *4. The curb had no obvious physical or construction defects. *Id.* at *2. The record contained no expert testimony that the curb or parking lot was designed or constructed in an unsafe, perilous or dangerous manner; it contained no evidence of other tripping accidents on any curb in the parking lot; and it contained no evidence that any building code or standard was violated in the construction or maintenance of the parking lot. We explained, "[i]t is conceivable that proof could be developed that would lead to the conclusion that the design and construction of the curb and the lighting in the parking lot created an unsafe, dangerous, or perilous condition. However, this record contains no such proof." *Id.* at *3. The court noted, "[t]he fact that Ms. Cagle tripped on the curb is not proof that the curb is dangerous or unsafe. Graceful athletes often trip on yardlines in football or on the foul line in basketball. People do trip and fall on conditions that are not unsafe." *Id.* Without some evidence in the record that the curb was defective or dangerous, summary judgment was appropriate.

We have reached similar results in several other cases. *See, e.g.*, *Grady v. Summit Food Corp.*, No. M2012-02493-COA-R3-CV, 2013 WL

---

[2]We note that the parties in this case did not submit any evidence regarding compliance with building codes. During the hearing on the motion for summary judgment, both parties' attorneys represented to the trial court that the City of Alamo has not adopted a building code.

4107285, at *6 (Tenn. Ct. App. Aug. 13, 2013) (*no perm. app. filed*) (affirming summary judgment to a defendant restaurant, finding the entrance ramp did not constitute a dangerous condition where there were no other reports of injuries at the walkway, it did not violate any applicable building codes, and it was cleaned regularly); *Christian v. Ebenezer Homes of Tenn., Inc.*, No. M2012-01986-COA-R3-CV, 2013 WL 3808210, at *5 (Tenn. Ct. App. July 17, 2013), *perm. app. denied* (Tenn. Dec. 26, 2013) (affirming summary judgment on a claim that windowless double doors were a dangerous condition, where the defendant showed that the doors were properly installed and functioning, they complied with applicable codes and were periodically inspected, and there were no other reports of incidents or injuries regarding the doors); *Gordon v. By-Lo Markets, Inc.*, No. E2009-02436-COA-R3-CV, 2010 WL 3895541, at *3 (Tenn. Ct. App. Oct. 5, 2010), *perm. app. denied* (Tenn. Mar. 9, 2011) (affirming summary judgment to a grocery store where the plaintiff relied on a photograph of the stained parking lot and her testimony that a slick spot caused her fall but failed to offer any evidence demonstrating that the stained parking lot constituted a dangerous condition); *Barron v. Stephenson*, No. W2004-02906-COA-R3-CV, 2006 WL 16310, at *4-5 (Tenn. Ct. App. Jan. 4, 2006) (affirming summary judgment in a case alleging that a handicap ramp constituted a dangerous condition, where the plaintiff alleged the ramp was slippery but admitted the owner was not required by law to cover the ramp's wooden surface, there was nothing obstructing her view of the ramp, and there were no foreign objects on the ramp); *Nee*, 106 S.W.3d at 654 (affirming a directed verdict for the defendant, explaining that a jury could not be permitted to infer that steps were dangerous from merely examining photos).

*Steele*, 2015 WL 9311846, at *7-8. In *Steele*, we affirmed the grant of summary judgment to the defendants because the plaintiff failed to present sufficient evidence to demonstrate that the five-inch step at the side of the wheelchair ramp constituted a dangerous or defective condition giving rise to a duty to remove or repair it or warn the plaintiff of its existence. *Id.* at *10.

Again, in the case at bar, Defendants filed a motion for summary judgment claiming that they had no duty to warn Mrs. Mooney of the three-and-one-half-inch drop-off at the doorway because it was not foreseeable that she would fall because of it. Mrs. Mooney described her fall as follows:

[A]s I was approaching the exiting front doors, it appeared that the inside store flooring was flush, or even, with the walkway on the outside and I

8

simply pushed the doors open to exit and stepped out believing my foot
would land at the same level as the exiting inside store floor, but yet there
was a drop off of several inches and it caused me to have no balance and to
fall, severely injuring myself.

Mrs. Mooney said that the drop-off "was not noticed by me and could not be noticed by
me as I exited store[.]" However, she admitted that she was looking straight forward as
she exited and not down at the step. Mrs. Mooney acknowledged that her vision was
unimpaired and that it was a clear sunny day. Defendants also noted that Mrs. Mooney
had traversed through the doorway without incident only minutes before her fall when
she entered the store. Mrs. Mooney testified that when she entered the store, "it did not
even feel as though I was entering at a higher level because it was only about three
inches." Defendants also submitted the testimony of the NAPA store manager, Mr.
Woodward, who testified that he had been working at that same location for about 26
years. During that time, the store entrance had remained in the same condition, and no
one had ever fallen. Defendants claimed that this evidence demonstrated that they had no
notice of any probability of harm to Mrs. Mooney and therefore Plaintiffs possessed
insufficient evidence to demonstrate the duty element of their negligence claim.

Having reviewed the evidence presented at this stage of the proceedings, we
conclude that Defendants satisfied their burden of production by demonstrating that
Plaintiffs' evidence at the summary judgment stage was insufficient to establish their
claim for negligence. Defendants' evidence demonstrated that no unreasonable risk to
Mrs. Mooney was to be anticipated from the three-and-one-half-inch decline in height at
the doorway.

When faced with a properly made and supported motion for summary judgment,
the nonmoving party may not rest on its pleadings "but must respond, and by affidavits or
one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the
summary judgment stage 'showing that there is a genuine issue for trial.'" *Rye*, 477
S.W.3d at 265 (quoting Tenn. R. Civ. P. 56.06). The nonmoving party must do more
than simply demonstrate some metaphysical doubt as to the material facts; the
nonmoving party must demonstrate the existence of specific facts in the record which
could lead a rational trier of fact to find in favor of the nonmoving party. *Id.*
"[S]ummary judgment may be granted when the evidence supporting the plaintiff's claim
'is merely colorable or is not significantly probative.'" *Steele*, 2015 WL 9311846, at *13
(quoting *Rye*, 477 S.W.3d at 252 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
249-50 (1986))).

The mere existence of a scintilla of evidence in support of the plaintiff's
position will be insufficient; there must be evidence on which the jury

could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]

*Id.*

In response to the Defendants' motion for summary judgment, Plaintiffs filed an affidavit of Mrs. Mooney and several depositions in an effort to demonstrate that genuine disputes of material fact existed for determination by a jury. First, they pointed to Mrs. Mooney's testimony about the circumstances surrounding her fall. Mrs. Mooney testified that as she approached the doorway, the interior tile appeared to be flush with the concrete outside, so she thought that the surface was even. Mrs. Mooney testified that when she stepped out, "both feet just fell" and she lost her balance because there was "a three inch drop."

Plaintiffs also submitted the deposition testimony of the store manager, Mr. Woodward. As noted above, he testified that no one had fallen at the doorway in his 26 years of employment. However, when Plaintiff's counsel asked if anyone had ever tripped or slipped while exiting, Mr. Woodward said that he had stumbled while going out the doorway. Mr. Woodward was asked if he could see how someone could stumble and fall if they forgot that the step-down existed, opened the door, and encountered an immediate step. He acknowledged that "anything is possible" but said the chance of that happening would be "[o]ne in a million." Finally, Plaintiffs relied on the deposition testimony of a former employee of the NAPA store, who was asked if he could see how a decline or incline of three and a half to four inches could cause someone to fall when stepping down or coming up, and he responded, "Sure." Plaintiffs argued that this evidence demonstrated Defendants' knowledge of a dangerous or defective doorway and created a genuine issue of fact for trial.

After carefully reviewing the evidence submitted in response to the motion for summary judgment, we conclude that Plaintiffs failed to demonstrate that a genuine issue of material fact existed regarding whether Defendants had knowledge of a dangerous condition. The scant evidence presented by Plaintiffs would require a fact finder to speculate in order to find that the condition of the NAPA entryway was dangerous or defective. As we explained in *Steele*,

[A] property owner is not responsible for removing or warning against "conditions from which no unreasonable risk was to be anticipated." *Parker*, 446 S.W.3d at 350. "The duty applicable to premises owners only requires them to remove or warn against conditions that are, in fact, dangerous." *Newcomb*, 2015 WL 3956038, at *3 (citing *Parker*, 446

10

S.W.3d at 350). A premises owner is not under a duty to warn of every aspect of a premises that may be unfamiliar. *Norfleet v. Pulte Homes Tenn. Ltd. P'ship*, No. M2011-01362-COA-R3-CV, 2011 WL 5446068, at *5 (Tenn. Ct. App. Nov. 9, 2011). "'To hold otherwise would necessarily cast the premises owner in the role of an absolute insurer of the social guest's safety, which is not contemplated by our negligence law.'" *Id.* (quoting *Eaton v. McLain*, 891 S.W.2d 587, 595 (Tenn. 1994)). Consequently, in order to hold a premises owner liable for an injury, there must be some evidence that a dangerous condition actually existed on the premises. *Nee*, 106 S.W.3d at 653. "A condition is dangerous 'only if it is reasonably foreseeable that the condition could *probably* cause harm or injury and that a reasonably prudent property owner would not maintain the premises in such a state.'" *Newcomb*, 2015 WL 3956038, at *4 (quoting *Stewart*, 2008 WL 426458, at *4). "The fact that an injury is simply possible, as opposed to probable, does not make a condition dangerous." *Newcomb* at *4; *see also Christian*, 2013 WL 3808210, at *3 ("probability, not possibility, governs; that it is possible does not make it dangerous").

2015 WL 9311846, at *9. We recognize that "'[t]here are circumstances in which stairs or steps may constitute dangerous conditions that give rise to a duty to warn.'" *Brown v. Mercer-Defriese*, No. E2015-00755-COA-R3-CV, 2016 WL 286456, at *7 (Tenn. Ct. App. Jan. 25, 2016), *perm. app. filed* (Mar. 24, 2016) (quoting *Norfleet*, 2011 WL 5446068, at *6) (emphasis omitted). However, "because steps are not inherently dangerous, a plaintiff cannot establish a 'defective or dangerous condition' merely by alleging that he or she tripped or fell on a step or set of stairs, without further proof." *Id.* at *7.

The record before us simply contains insufficient evidence to allow a jury to *reasonably* find that the three-and-one-half-inch step at NAPA was unreasonably dangerous or defective. The proof does not reasonably lead to the conclusion that the step-down was dangerous in the sense that it was reasonably foreseeable to Defendants that it would *probably* cause harm or injury. No one had fallen because of the step-down in the past 26 years, and Mrs. Mooney traversed over the step without any trouble when she entered the store. Although Plaintiff cited the store manager's acknowledgment that he had stumbled while exiting the store, he did not state when this occurred or how many times it occurred over the 26-year period. More importantly, Mr. Woodward testified that when he had stumbled exiting the store, he stumbled because he had something in his hands, was looking at something else, or tripped over his own feet. He specifically denied that he had ever stumbled because of the step. Moreover, the evidence regarding Mr. Woodward stumbling only demonstrates that he stumbled, not that the step had ever caused any harm or injury. Mr. Woodward testified that when he stumbled, he was not

injured. "A condition is dangerous 'only if it is reasonably foreseeable that the condition could *probably* cause harm or injury and that a reasonably prudent property owner would not maintain the premises in such a state.'" *Newcomb*, 2015 WL 3956038, at *4 (quoting *Stewart*, 2008 WL 426458, at *4). The evidence submitted by Plaintiff fails to establish reasonable foreseeability that the step-down at the NAPA doorway would *probably* cause harm or injury.

The same holds true for the employees' answers regarding whether it would be possible for the step-down to cause injury to someone who forgets about it. The employees acknowledged the remote possibility of an injury occurring but did not establish that it was probable. In fact, Mr. Woodward estimated the probability at one in a million.

Finally, we conclude that Plaintiffs did not create a genuine issue of material fact simply by pointing to the testimony of Mrs. Mooney that she did not notice the step-down. She testified that she was not looking down at the step-down when she exited the doorway.

While these facts demonstrate that an unfortunate accident occurred, they do not demonstrate that a dangerous or defective condition existed on Defendants' premises such that they had a duty to remove or repair the condition or warn Mrs. Mooney of its existence.[3] We agree with the trial court's conclusion that it was not reasonably foreseeable that someone would fall traversing the doorway in question. Accordingly, we affirm the trial court's order granting summary judgment to the Defendants.

## V. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed

[3]During oral argument in this case, Plaintiff's counsel argued that this case was comparable to *Brown v. Mercer-Defriese*, 2016 WL 286456, recently decided by the Eastern Section of this Court. However, we consider it factually distinguishable. *Brown* was a premises liability case involving a three-inch threshold or step between two interior rooms in a rental home. *Id.* at *1. The Court of Appeals concluded that reasonable minds could differ on the question of whether the step was dangerous due to the testimony of expert witnesses on both sides that the step was a "trip hazard," one expert's opinion that the unusually short size of the single step between two interior rooms was dangerous and "high-risk," the plaintiff's testimony, and photographs of the accident scene. *Id.* at *7. The evidence presented by Plaintiffs does not rise to that level and does not allow reasonable minds to reach different conclusions.

Plaintiffs also compared their facts to those in *Walden v. Central Parking System of Tennessee, Inc.*, 471 S.W.3d 818, 820 (Tenn. Ct. App. 2015). However, *Walden* involved a plaintiff who was looking down where she was walking, and the Court concluded that summary judgment was inappropriate under the summary judgment standard set forth in *Hannan v. Alltel Publishing Co.,* 270 S.W.3d 1, 8-9 (Tenn. 2008). The *Hannan* standard is inapplicable to this case.

and remanded for further proceedings.  Costs of this appeal are taxed to the appellants, Carol Mooney and Joey Mooney, and their surety, for which execution may issue if necessary.

_____

BRANDON O. GIBSON, JUDGE